

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| JEROME ARMSTRONG,  §<br>        Plaintiff,  §<br>  §<br>vs.  §<br>  §<br>BRANDON BYRD, VANISSA MITCHELL,  §<br>CANDICE JAMISON, INDIA EASLEY,  §<br>JUDY MATHER, ANTHONY WRIGHT,  §<br>DWAYNE CAMPBELL, CHARLES  §<br>TRUESDELL, LESLIE BROWN, KELVIN  §<br>AVERY, WHITNEY THURMOND,  §<br>STANLEY TERRY, CHARLES WILLIAMS,  §<br>and THOMAS ROBERTSON,  §<br>        Defendants.  § | Civil Action No.: 6:22-4208-MGL |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND DENYING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Jerome Armstrong (Armstrong) filed a complaint against Defendants Brandon Byrd (Byrd), Vanissa Mitchell (Mitchell), Candice Jamison (Jamison), India Easley (Easley), Judy Mather (Mather), Anthony Wright (Wright), Dwayne Campbell (Campbell), Charles Truesdell (Truesdell), Leslie Brown (Brown), Kelvin Avery (Avery), Whitney Thurmond (Thurmond), Stanley Terry (Terry), Charles Williams (Williams), and Thomas Robertson (Robertson) (collectively, Defendants), alleging violations of his constitutional rights under 42 U.S.C. § 1983.

This matter is before the Court for review of the Report and Recommendation of the Magistrate Judge (Report) recommending the Court deny Defendants' motion to dismiss. The

Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on August 7, 2023. Defendants objected on August 21, 2023, and Armstrong failed to reply. The Court has reviewed the objections, but holds them to be without merit. It will therefore enter judgment accordingly.

First, Defendants contend the Magistrate Judge improperly refrained from considering whether Armstrong exhausted his remedies. Armstrong argued in his response to the motion that he has sufficiently alleged exhaustion was unavailable.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

In other words, administrative remedies are unavailable if they "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" the process was "so opaque that it becomes, practically speaking, incapable of use" or because "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016)

(explaining when "rules are so confusing that no reasonable prisoner can use them then they're no longer available." (internal quotation and alterations omitted)).

Exhaustion is an affirmative defense for which Defendants bear the burden. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). The Fourth Circuit has "caution[ed] that only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." *Moore*, 517 F.3d at 725 (internal citation omitted). But, "even if it is not apparent from the pleadings that there are available administrative remedies that the prisoner failed to exhaust, a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." *Id.*

> Armstrong alleges
>
> administrative remedies were unavailable to [Armstrong] for various reasons, including that they were incapable of use to obtain relief, they operated as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates, they were so opaque that they were practically speaking incapable of use such that no ordinary prisoner could discern or navigate them, and prison administrators have a history of thwarting inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation.

Complaint ¶ 18. He also contends that he needs discovery to develop his claims that administrative remedies were unavailable.

To counter Armstrong's allegations regarding unavailability, Defendants attached various affidavits and documentation explaining the exhaustion process and the resources available to prisoners.

The Court acknowledges the goal of the Prison Litigation Reform Act (PLRA) to cull the "disruptive tide of frivolous prisoner litigation[.]" *Woodford v. Ngo*, 548 U.S. 81, 97 (2006). Generally, exhaustion helps develop an administrative record, prompt corrective action

eliminating the need for litigation, *Porter v. Nussle*, 534 U.S. 516, 525 (2002), avoid unwarranted interference with prison administration, *Woodford*, 548 U.S. at 93, and promote judicial economy, *Id.* at 89.

Nevertheless, the goal of reducing frivolous litigation came with an associated interest—allowing judicial resources to go toward meritorious suits. *See Jones v. Bock*, 549 U.S. 199, 203 (2007) ("What this country needs, Congress decided, is fewer and better prisoner suits[.]"). Congress had no intention of blocking relief on valid claims.

Given Armstrong's allegations that he was prevented from utilizing the administrative exhaustion procedures, the Court is loath to dismiss his complaint before giving him a chance to develop this claim. Although Defendants imply that the Court should order discovery on just this issue, the Court determines this may result in redundancy in the discovery process, and thus will refrain from such an order.

Accordingly, the Court will overrule this objection.

Second, Defendants maintain the Magistrate Judge failed to address Armstrong's failure to protect claims against Byrd, Mitchell, Jamison, Easley, Mather, Williams, and Robertson.

Armstrong's complaint alleges a single Section 1983 claim against all Defendants. He implies several "subclaims," such as supervisory liability, failure to protect, and cell assignment, which pertain to certain subsets of Defendants.

The Magistrate Judge determined that Armstrong fails to assert his failure to protect subclaim against Byrd, Mitchell, Jamison, Easley, Mather, Williams, and Robertson. Because at least one other subclaim applies to those defendants, however, the Court need not dismiss the Section 1983 claim against them.

The Court will thus overrule this objection, too.

5

Similarly, Defendants posit the Magistrate Judge failed to address Armstrong's cell assignment claims as to Wright, Campbell, Truesdell, Brown, Avery, Thurmond, and Terry.

As above, the Magistrate Judge explained that Armstrong fails to pursue his cell assignment claims against Wright, Campbell, Truesdell, Brown, Avery, Thurmond, and Terry. But, he has other Section 1983 subclaims against these defendants. Thus, dismissal of his Section 1983 claim is unwarranted.

Therefore, the Court will overrule this objection as well.

After a thorough review of the Report and the record in this case under the standard set forth above, the Court overrules the objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of the Court Defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.

Signed this 12th day of October 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE